# EXHIBIT A

FILED

JAN 17 2023

TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF SPOKANE

| | |
|---|---|
| DDD, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>LUX VENDING, LLC D/B/A BITCOIN DEPOT, a foreign limited liability company,<br><br>Defendant. | NO. 23200176-32<br><br>COMPLAINT FOR FRAUD AND DECLARATORY RELIEF |

Plaintiff, DDD, Inc., by and through its attorneys of record, the law firm of Hawley Troxell Ennis & Hawley LLP, hereby complains and alleges as follows:

## I.
## PARTIES, JUSRISDICTION AND VENUE

1. At all times relevant to this action, Plaintiff, is a corporation formed pursuant to the laws of the State of Washington with its principle place of business in Spokane County, Washington.

2. Defendant, Lux Vending, LLC dba Bitcoin Depot, is a Georgia limited liability company and is registered as a foreign limited liability company under the laws of the State of Washington. Defendant does business in Spokane County, Washington.

COMPLAINT FOR FRAUD AND DECLARATORY
RELIEF- 1

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Ave., Suite 1100
Spokane, Washington 99201
509.624.5265

3. The agreements purportedly entered into by and between Plaintiff and Defendant were entered into in Spokane, Washington, and all representations made by and negotiations involving the Parties occurred in Spokane County, Washington.

4. The Court has subject matter jurisdiction over this dispute.

## II.
## FACTUAL BACKGROUND

5. Plaintiff repeats and realleges every allegation contained in paragraphs 1-4 of this Complaint is if fully set forth herein.

6. Plaintiff was approached by representatives of Defendant in April of 2021 with Defendant seeking an agreement with Plaintiff to place Defendant's bitcoin automated teller machines in convenience stores owned and operated by Plaintiff.

7. In May 2021, Defendant's agent met with Plaintiff and presented Plaintiff with a document entitled Kiosk Site Location Agreement. Defendant represented that the Kiosk Site Location Agreement was the Agreement that governed the placement of the ATM in Plaintiff's store. See Kiosk Site Location Agreement dated 5/18/21 attached as Exhibit 1 to this Complaint.

8. Based upon the terms contained in the Kiosk Site Location Agreement, Plaintiff entered into the Agreement with Defendant for one of its stores located at 4615 N. Division St., Spokane, Washington by signing a Kiosk Placement Form on May 18, 2021. See executed Kiosk Placement Form dated 5/18/21 attached as Exhibit 2 to this Complaint.

COMPLAINT FOR FRAUD AND DECLARATORY RELIEF- 2

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Ave., Suite 1100
Spokane, Washington 99201
509.624.5265

9. At the time of the signing of the Kiosk Placement Form, Defendant represented to Plaintiff that the "Location Master Agreement" referred to in the Kiosk Placement Form was the Kiosk Site Location Agreement provided to him.

10. Paragraph 12 of the Kiosk Site Location Agreement provides that:

> "If the Location is sold or sells substantially all of its assets outside of the ordinary course of business, the Agreement will terminate and Location's obligations discharged so long as Location provides a document to Owner evidencing the sale such as a receipt, asset purchase agreement or bill of sale."

11. In October 2021, Plaintiff was again approached by Defendant seeking a second agreement to place one of Defendant's ATMs in another convenience store owned and operated by Plaintiff and located at 3812 E. Highland Rd., Mead, Washington.

12. As to this second ATM agreement proposed by Defendant, Plaintiff expressly asked and Defendant represented that the same terms governed this agreement as the Agreement entered into by the parties on 5/18/21.

13. Based upon Defendant's representations regarding the terms of the Agreement, Plaintiff signed another Kiosk Placement Form dated 10/29/21. See Kiosk Placement Form dated 10/29/21 attached as Exhibit 3 to this Complaint.

14. Thereafter, in October 2022, Plaintiff entered into an agreement to sell the convenience stores where Defendant had placed its ATMs.

15. During the process of selling its stores, Plaintiff sent the required notice of the sale of the stores pursuant to the terms of the Agreement to Defendant to terminate the Agreement entered into by the Parties.

16. In response to Plaintiff's notice of termination of the Agreement, Defendant refused to allow the Agreement to be terminated citing provisions of an agreement that had never been provided to Plaintiff and which Plaintiff had never seen. See Location Master Agreement terms attached hereto as Exhibit 4 to this Complaint.

17. Defendant then asserted that the terms of the new Location Master Agreement governed the relationship between the parties and refused to terminate the agreement.

18. Based on the terms of the new Location Master Agreement, Defendant also made a significant monetary demand to Plaintiff for payment of money Defendant expected to be paid based on the continued placement of the ATMs in Plaintiff's stores.

19. There was no meeting of the minds, mutual understanding of, or mutual assent to the materials terms of the Agreement the Parties purportedly entered into related to the placement of Defendant's ATMs in Plaintiff's stores.

20. A dispute has arisen between the Parties regarding the materials terms of the Agreement the Parties entered into related to the placement of Defendant's ATMs in Plaintiff's stores.

## III.
## FIRST CAUSE OF ACTION
### (Intentional Misrepresentation - Fraud)

21. Plaintiff repeats and realleges every allegation contained in paragraphs 1-20 of this Complaint is if fully set forth herein.

COMPLAINT FOR FRAUD AND DECLARATORY RELIEF- 4

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Ave., Suite 1100
Spokane, Washington 99201
509.624.5265

22. Defendant sought to obtain Plaintiff's agreement to place its ATMs in Plaintiff's stores, and to induce Plaintiff to agree to this, Defendant made material misrepresentations about the terms of the proposed agreement.

23. On or about May 18, 2021, Defendant approached Plaintiff about placing its ATM inside of Plaintiff's store. To induce Plaintiff to enter into the Agreement, Defendant provided the Kiosk Site Location Agreement and represented that these were terms which governed the contract between the Parties regarding the placement of Defendant's ATM in Plaintiff's store.

24. The Kiosk Site Location Agreement allows for termination of the Agreement without penalty if Plaintiff's store is sold. Plaintiff specifically relied on the terms of the Agreement as represented to it in deciding whether to enter into the Agreement.

25. On or about October 29, 2021, Defendant sought to obtain a second agreement from Plaintiff to place another of its ATMs in a second store owned by Plaintiff. Defendant induced Plaintiff to enter into the Agreement by expressly representing that the terms of the agreement for the second ATM placement were the same as those set forth in the May 18, 2021 Kiosk Site Location Agreement.

26. Over a year after Plaintiff executed the first Agreement, Defendant claimed that the Kiosk Site Location Agreement was not the Agreement Plaintiff had entered into and that a new Location Master Agreement governed the relationship between the Parties. Defendant asserts that this new agreement did not allow a termination of the Agreement if the stores were sold, and Defendant made demand for all of the profits

COMPLAINT FOR FRAUD AND DECLARATORY RELIEF- 5

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Ave., Suite 1100
Spokane, Washington 99201
509.624.5265

it alleges it would have earned if the Agreement was in force for the entire term of the Agreement.

27. Defendant made intentional and fraudulent misrepresentations regarding the terms of the Agreement governing the placement of Defendant's ATMs in Plaintiff's stores to induce Plaintiff to enter into the agreements.

28. Defendant's intentional and fraudulent misrepresentations have caused Plaintiff significant damage.

29. Plaintiff has been forced to retain an attorney to address Defendants fraud by filing this action, and is entitled to its attorney's fees and costs expended in prosecuting this action.

## IV.
## SECOND CAUSE OF ACTION
### (Declaratory Relief)

30. Plaintiff repeats and realleges every allegations contained in paragraphs 1-29 of this Complaint is if fully set forth herein.

31. RCW 7.24, et seq. provides the Superior Court with the authority to declare rights, status and other legal relations under contracts and instruments. An active controversy exists as to the Parties' rights and interests under the Agreements that are the subject of this action.

32. Plaintiff seeks a declaratory ruling from this Court finding that the Agreements are invalid and unenforceable as there was no meeting of the minds regarding the terms of the Agreements that is required to form an agreement between the Parties.

COMPLAINT FOR FRAUD AND DECLARATORY RELIEF- 6

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Ave., Suite 1100
Spokane, Washington 99201
509.624.5265

33. Plaintiff has been forced to retain an attorney to address Defendant's fraud by filing this action, and is entitled to its attorney's fees and costs expended in prosecuting this action

## V.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a judgment in favor of Plaintiff declaring any alleged Agreement between the Parties invalid and unenforceable;

2. Compensatory damages for the fraud committed by Defendant;

3. Punitive damages against Defendant for the fraud committed by Defendant;

4. For prejudgment interest and post judgment interest as provided by applicable law;

5. For attorney's fees and costs as provided under by Agreement and pursuant to Washington law;

6. For such other and further relief as the Court may deem just and proper.

DATED this 17th day of January, 2023.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By: _____
MICHAEL R. MERRITT, WSBA #60094
Counsel for Plaintiff

COMPLAINT FOR FRAUD AND DECLARATORY RELIEF- 7

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Ave., Suite 1100
Spokane, Washington 99201
509.624.5265

# EXHIBIT 1

## Kiosk Site Location Agreement

This Kiosk Site Location Agreement (the "Agreement") is made and entered into effect  5-18-2021  (the "Effective Date") by and between Lux Vending, LLC ("Owner"), and  MonThTown Chevron  ("Location")

1. **Equipment:** Owner owns kiosks that facilitate the purchase and sale of virtual currency and owns or has the right to use all software needed for the operation of the kiosk (the "Kiosk"). Location agrees that Owner may install, operate, and maintain its Kiosk at Location's premises identified in Exhibit "1" attached hereto (the "Premises"). The Kiosk will be installed in an indoor, mutually agreeable location on the Premises. The Kiosk will be installed to provide an unrestricted view of the Kiosk with room for signage. Location will provide sufficient space for the Kiosk as is necessary to enable customers to have unobstructed access to the Kiosk and for maintenance and servicing of the Kiosk.

2. **Availability:** Location agrees that the Kiosk shall at all times remain available for use by Location's customers during Location's normal business hours for the Term (defined below) of this Agreement. Owner reserves the right to schedule reasonable downtime to accomplish necessary maintenance or system improvements.

3. **Location Fees:** Once the Kiosk has been installed on the Premises and is fully operational for use by the public, Owner shall pay Location a fee equal to One Hundred Fifty dollars and zero cents ($150.00) per month throughout the Term or One Dollar Fifty ($1.50) per transaction (the "Location Fee"). Whichever of the two payments is greater will be disbursed to the Location. For purposes of this Agreement, a transaction is defined as any sale of virtual currency where a transaction fee is collected by the Owner. The Location Fee will be disbursed monthly by Owner to Location the calendar month following the calendar month in which the Kiosk transactions occurred.

4. **Title:** Title to the Kiosk is, and shall at all times remain with the Owner. The Kiosk shall not be transferred or delivered legally or physically to any person other than Owner without prior written consent of Owner; neither shall this Agreement nor the bailment be assigned by Location, either by its own acts or by operation of law. In the event that any creditor of Location enters the Premises for the purpose of taking possession of Location's separate property pursuant to a security agreement, Writ of Possession, Distress Warrant or Writ of Fieri Facias, Location shall identify, designate, and exclude the Kiosk as Owner's property not subject to repossession or execution. Location shall promptly notify Owner in writing of any attempts by any creditor, landlord or third-party claimants seeking to repossess Location's separate property or seeking to execute a Writ of Possession, Distress Warrant or Writ of Fieri Facias at the Premises. Upon Owner's request, Location shall further identify any such creditors, landlords or third-party claimants to Owner. Upon request, Location shall execute and deliver documentation to put third parties on notice of Owner's ownership of the Kiosk. Notwithstanding Section 5 herein, Location acknowledges that the Kiosk is not a fixture of the Premises and Location shall undertake all necessary steps to ensure that the Kiosk does not become a fixture of the Premises. Except as otherwise provided in this Agreement, all cash kept in the Kiosk shall be the property of Owner.

5. **Installation/Training:** Owner agrees to ship and install the Kiosk at the Premises, train Location's staff as necessary, and deliver initial supplies to Location. Subject to the terms and provisions of Section 4 herein, Owner shall have the right to bolt down the Kiosk and install appropriate signage at the Premises to advertise the availability of the Kiosk.

6. **Maintenance/Repair:** Owner, at its expense, will arrange for necessary servicing and repair of the Kiosk. In the event of any Kiosk failure, damage, or other problem requiring repair, replacement, adjustment, or maintenance, Location shall notify Owner, or a person designated by Owner, within twenty-four (24) hours of first becoming aware of such failure, damage, or problem. Location will not permit anyone, other than an authorized representative or designee of Owner, to perform any service or repair work on the Kiosk without Owner's prior written approval. Owner or its representatives shall, at any reasonable time and at all times during business hours, have the right to enter into and upon the Premises for the purpose of inspecting, repairing, maintaining, or upgrading the Kiosk and observing its use. Location shall cooperate in allowing Owner to perform maintenance, service, updates, or repairs that can be performed by remote communication. Owner, or Owner's agents, shall replace paper in the Kiosk when necessary and shall correct any misfeeds. Location shall maintain the space surrounding the Kiosk in a safe, neat, and orderly condition.

7. **Inventory Requirements:** Owner or Owner's agents shall maintain inventory of an adequate supply of paper and Bitcoin for the Kiosk. Owner shall keep sufficient amounts of cash in the Kiosk at all times during Location's normal business hours if the Kiosk dispenses cash.

8. **Internet & Electrical Requirements:** Location can choose to provide and maintain a dedicated business Ethernet or Wi-Fi connection for the Kiosk or Location may require the Owner to provide a wireless connection for the Kiosk. Location shall, at its expense, provide one (1) dedicated operating electrical power outlet (110v). Both the internet connection and the electrical power outlet shall be located within two (2) feet of the Kiosk site, or an extension cord shall be provided by Location. Location shall pay for all expenses incurred for an internet connection if Location provides an ethernet connection for the Kiosk. Location shall pay for all expenses incurred in connection with electrical power usage necessary to operate the Kiosk and related signage. Location shall not interfere with the Kiosk's electrical or internet connectivity for duration of the Agreement and Location shall not disconnect or deactivate the Kiosk or allow the Kiosk to be disconnected or deactivated. If the Kiosk remains disconnected or deactivated after Owner provides written notice, Owner will be excused from paying the Location Fee for so long as the Kiosk remains disconnected or deactivated and Location shall be liable to Owner for a "Disconnection Fee" in the amount of One Hundred ($100.00) for each day the Kiosk remains disconnected or deactivated. The Parties acknowledge and agree that the Disconnection Fee is not a penalty but is instead intended to be liquidated damages. The Parties agree and acknowledge that Owner's damages would be difficult to estimate upon disconnection or deactivation of the Kiosk but that One Hundred Dollars per day ($100.00) is a reasonable method of calculating Owner's damages and the Parties agree that this

2

provision should be read as liquidated damages rather than a penalty. Location's liability for the Disconnection Fee will continue during the Term for so long as the Kiosk remains disconnected or deactivated. Owner may retrieve the Kiosk for purposes of safe keeping, but Owner's acceptance of the Kiosk will not discharge Location of its obligation to pay the Disconnection Fee. Location agrees to pay Owner's reasonable attorney's fees and expenses of litigation in the event Owner engages counsel to collect the Disconnection Fee. Notwithstanding the foregoing, the Disconnection Fee shall not apply to interference directly resulting from power outages beyond the reasonable control of the Location and/or an agent or party acting on behalf of the Location.

9. **Exclusivity; Competitors:**

   9.1   Location shall not permit the removal of the Kiosk from the Premises for the duration of the Term.

   9.2   Location shall not enter into an agreement with any Competitor or allow the placement of a Competitor's kiosk on the Premises (whether inside or outside the Premises) or anywhere on the underlying real property on which the Premises are located, nor subscribe to any processing service for the purchase or sale of virtual currency on the Premises that may compete with the Owner's Kiosk during the term of this Agreement. For purposes of this Agreement, "Competitor" means any person or entity that trades virtual currency; owns or operates digital currency kiosks; or conducts, authorizes, offers or provides services and products of the type conducted, authorized, offered or provided by Bitcoin Depot during the term of this Agreement or any person or entity that facilitates the purchase or sale of digital currency.

   9.3   Location agrees that Owner shall have the exclusive right to provide digital currency kiosks or any terminal that can conduct and/or execute digital currency transactions to Location and to all other business sites occupied (including by way of ownership, lease or sublease) by Location.

   9.4   If Location violates this Agreement by entering into an agreement with a Competitor and fails to cure such violation within ten (10) days after receipt of Owner's notice of the violation, Owner shall have all remedies provided by law.

   9.5   Location's obligations under this Section 9 have been assumed as an accommodation to Owner and as a material inducement to Owner to enter into this Agreement. Any breach of Location's obligations under this Section 9 shall be deemed a material breach of this Agreement. The Parties agree that Location's breach of this exclusivity agreement would cause irreparable damage to Owner and monetary damages would provide inadequate remedy to Owner. Owner will be entitled to seek temporary and permanent injunctive relief to prohibit additional violations of this exclusivity agreement in addition to seeking any award of damages for such violation.

10. **Protection Requirements:** Location shall exercise due care for the safekeeping and maintenance of the Kiosk. Location shall not be held liable for damage, theft or loss of the Kiosk except in cases of fraud, gross negligence, or intentional malfeasance by the Location. Owner shall have no liability to Location in the event of theft, damage or loss caused by the Kiosk.

11. **Ownership of Premises or Lease Term(s):** Location represents and warrants that it is the owner of the Premises or that it holds a lease or option to renew a lease of the Premises of equal or greater length than the Initial Term (as defined below) of this Agreement. If Location leases the premises, the Location shall notify Owner of any dispossessory or distress proceedings initiated against Location or the Premises within twenty-four (24) hours of being served with process of the dispossessory or distress proceedings. In the event that dispossessory or distress proceedings are initiated against Location, Owner has the right to terminate this Agreement and reclaim possession of the Kiosk.

12. **Relocation; Sale; Expansion:** In the event Location transfers or moves its business from the Premises, expands its business to additional sites, or if Location sells its business or substantially all of its assets, Location shall provide Owner with at least sixty (60) days' advance written notice of such occurrence (or as much notice as reasonably practicable) ("Location's Notice"). Owner shall have the exclusive option to install an additional Kiosk at the Location's (or its successor in interest's) new business site(s) along the same terms and conditions set forth in this Agreement (the "Option"); and Owner may exercise its Option by delivering written notice of its intent to exercise its Option within thirty (30) days from its receipt of Location's Notice. Location agrees that, in the event of transfer, move or sale of Location's business, this Agreement remains in full force and effect as to the Location's new business site(s) and Exhibit "1" shall be deemed amended so that the Premises shall include the Location's new business site(s). If the Location is sold or sells substantially all of its assets outside the ordinary course of business, this Agreement will terminate and Location's obligations discharged so long as Location provides a document to Owner evidencing the sale such as a receipt, asset purchase agreement or bill of sale.

13. **Term:** This Agreement shall be for a term of seven (7) years from the date of installation of the Kiosk at the Premises, unless amended or terminated by written agreement signed by both Owner and Location, or terminated as set forth below (the "Initial Term"). Upon the expiration of the Initial Term, this Agreement will automatically renew for subsequent additional terms of seven (7) years each on the same terms and conditions as provided herein unless canceled by written notice at least ninety (90) days prior to expiration of the then current term (the Initial Term, as extended, the "Term").

14. **Termination:** Upon the occurrence of a breach, either party may terminate this Agreement effective ten (10) days after giving written notice of intent to terminate, provided that such breach continues for ten (10) days after notice of such breach. Either party may terminate this Agreement in accordance with the terms and provisions of Section 13. In addition, Owner may terminate this Agreement upon giving thirty (30) days prior written notice to Location. Owner has the right to terminate this Agreement immediately in the event of damage, destruction, vandalism, misuse, loss, or the Owner, in good faith, believes that the

4

Kiosk is at risk for damage, destruction, vandalism, misuse or loss. Even if the Agreement is terminated, Location's obligation to pay a Disconnection Fee shall survive for the duration of the length of the Term. In the event the Agreement is terminated, Owner may declare all Disconnection Fees due for the length of the Term immediately due and payable so long as the Owner discounts the future Disconnection Fees to a net present value using the Wall Street Journal's Prime Rate.

All notices hereunder shall be in writing and shall be deemed given upon personal delivery or upon deposit in the United States certified mail, return receipt requested, with postage paid or by overnight receipted courier service, addressed to Owner and Location at their respective addresses as listed below. Any party may change its address for notice in accordance with the terms of this paragraph.

15. **Disclaimer:** EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, LOCATION UNDERSTANDS AND AGREES THAT OWNER MAKES NO WARRANTY, EXPRESS, IMPLIED, OR STATUTORY AS TO ANY MATTER WHATSOEVER, INCLUDING THE CONDITION OF THE KIOSK, ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. OWNER SHALL IN NO EVENT BE RESPONSIBLE FOR ANY LOST PROFITS OR INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR INDIRECT DAMAGES THAT LOCATION MAY INCUR. OWNER'S SOLE LIABILITY TO LOCATION HEREUNDER, EXCEPT AS OTHERWISE PROVIDED, SHALL BE TO REMEDY ANY BREACH OF THIS AGREEMENT IN A TIMELY MANNER. NEITHER PARTY WILL BE LIABLE FOR FAILURE TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT IF SUCH FAILURE IS DUE TO ACTS OR EVENTS BEYOND SUCH PARTY'S REASONABLE CONTROL.

16. **Not Assignable:** Location shall not assign or dispose of any of its rights or obligations under this agreement without prior written consent of Owner. This agreement is binding on the successors and permitted assigns of the parties.

17. **Waiver:** A waiver by either party of a breach of any provision of this Agreement shall not constitute a waiver of that party's rights to otherwise demand strict compliance with this Agreement and any and all provisions hereof.

18. **Arbitration:** Except as specified in this Section 18, any dispute, controversy, or claim arising out of or relating to this Agreement or the breach, termination or validity of this Agreement will be submitted to arbitration as prescribed herein. The parties will agree on a single arbitrator within thirty (30) days of receipt of a notice of intent to arbitrate. Such arbitrator will be knowledgeable about the ATM industry and will conduct the arbitration under the current Commercial Arbitration rules of the American Arbitration Association ("AAA"), unless otherwise provided herein. The arbitrator will be selected in accordance with AAA procedures from a list of qualified people maintained by AAA. The arbitration will be conducted in Atlanta, Georgia. The arbitrator's decision and award will be final and binding, and judgement upon the award rendered by the arbitrator may be entered in any

court having jurisdiction thereon. Any duty to arbitrate under this Agreement will remain in effect and enforceable after termination of this Agreement for any reason.

19. **Entire Agreement:** This Agreement, including any schedule or exhibit attached hereto, constitutes the entire agreement of the parties with respect to the subject matter hereof. There are no other promises, representations, terms, conditions, or obligations other than those contained herein. This agreement supersedes all prior communications, representations or agreements, oral or written, between the parties and shall not be modified except in writing signed by both parties.

20. **Controlling Law:** This Agreement shall be construed, interpreted, and enforced in accordance with the laws of the State of Georgia, without regard to its conflict of law principles. The jurisdiction and venue for any legal proceeding to interpret or enforce this Agreement shall be in Fulton County, Georgia or any county where Owner (or its successor in interest) maintains its principal place of business or residence.

21. **Counterparts:** This Agreement may be executed in counterparts and exchanged via email transmission. Each email transmitted counterpart (including pdf) bearing a signature shall be an original for all purposes and all such counterparts shall constitute one and the same agreement.

22. **Third-Party Beneficiaries.** There shall be no Third-Party Beneficiaries to this agreement.

# EXHIBIT 2

## Kiosk Placement Form

| Location Legal Entity: DDD, INC. | Effective Date: 5-18-2021 |
|---|---|
| Location DBA Name: NorthTown Chevron | Pacific distributing |
| Phone: 509-489-9039 | Distributor Name (Entity and DBA): |
| Email: bdive1@msn.com | Phone: 1-800-548-1913 |
| Address to be used for payment: 4615 N. Division St Spokane, WA. 99207 | Email: pacificdistributing.86@gmail.com Sales Contact: Mark Smith 770 670 9095 mark@bitcoindepot.com |
| Tenant or Landlord? Tenant | |
| If Tenant, lease end date: 12/31/2039 | |
| Term: 7-Years | |

| Premises [Put full address of store] | Additional Entity (if applicable) | Per Trans. Fee | Flat Fee: |
|---|---|---|---|
| 4615 North Division Spokane, WA 99207 | | 1.50 | 150.00 |

By signing below, Location and Bitcoin Depot expressly agree to be bound by all of the terms and conditions of the Location Master Agreement located at get.bitcoindepot.com/LMA or such other URL or address as provided by Bitcoin Depot from time to time ("LMA"), which is hereby incorporated by reference. Capitalized terms shall have the meaning set forth in the LMA. Location acknowledges and agrees that it has read and understands the terms set forth in the LMA and that all information in this Kiosk Placement Form is accurate and complete.

Owner:
Signed: *Landon Thomas*

Lux Vending, LLC d/b/a Bitcoin Depot
2870 Peachtree Rd #327
Atlanta, Georgia, 30305

Name: _____

Location:
Signed: X _____

Name: Robert A. Divelbiss
Title: President
Address: 40303 Northshore Dr. Loon Lake, WA. 99148